UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JARED BREAUX, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 25-1055** |
| **OCCIDENTAL CHEMICAL CORPORATION, ET AL.** | **SECTION I** |

## ORDER

This case was removed to this Court by defendants Occidental Chemical Corporation ("OxyChem") and Eric Henderson ("Henderson") (collectively, "defendants") on the basis of diversity jurisdiction.[1] Before the Court is a motion[2] to remand filed by plaintiffs Jared Breaux, Jayce Breaux, and Josh Dake (collectively, "plaintiffs"). Defendants filed a response in opposition.[3] No reply was filed by plaintiffs before the noticed submission date.[4] For the reasons set forth below, the Court denies plaintiffs' motion to remand.

### I. BACKGROUND

This case arises out of injuries plaintiffs sustained on July 18, 2023, while working at one of OxyChem's facilities.[5] At the time, plaintiffs were employed by River Parish Contractors and were working at OxyChem's Geismar Plant as pipefitters.[6] They were tasked with cutting pipe the day of the incident.[7] The specific

---

[1] *See* R. Doc. No. 1.
[2] R. Doc. No. 10.
[3] R. Doc. No. 12.
[4] *See* R. Doc. No. 10-8 (setting submission for July 23, 2025).
[5] *See generally* R. Doc. No. 5.
[6] *Id.* at ¶ 8.
[7] *Id.* at ¶ 9.

1

pipe plaintiffs were cutting was connected to an air line that had been "cut off prior to cutting."[8] Because "the line had already been cut," plaintiffs were faced with a chlorine cloud when an operator at the Geismar Plant "hooked up the other end of the air line to one of the tanks to blow out the chlorine."[9] As a result, plaintiffs have suffered "serious physical symptoms," including, "severe burns to their throats . . . chest pain, shortness of breath, coughing up blood, vomiting, [and] major headaches."[10]

Plaintiffs originally filed suit against OxyChem in Dallas County, Texas, where OxyChem maintains its principal place of business.[11] After some discovery was conducted, OxyChem moved to dismiss the case on the ground of *forum non conveniens*.[12] The Texas court granted OxyChem's motion and dismissed the case, finding that plaintiffs' claims would be more properly heard in Louisiana.[13]

Plaintiffs filed suit in Louisiana state court on April 22, 2025. For the first time, they named both OxyChem and Henderson, a citizen of Louisiana, as defendants.[14] Plaintiffs had learned from OxyChem during discovery related to the Texas case that defendant Henderson was the OxyChem employee that had hooked up the tank to the air line that had led to plaintiffs being hit with the chlorine cloud.[15]

---

[8] *Id.*
[9] *Id.*
[10] *Id.* at ¶ 13.
[11] *See* R. Doc. No. 10-1, at 1; *see also* R. Doc. No. 10-2 (original Texas petition).
[12] R. Doc. No. 10-1, at 2.
[13] *See* R. Doc. No. 10-6.
[14] R. Doc. No. 10-1, at 2.
[15] *Id.*; R. Doc. No. 12, at 2–3.

2

On May 28, 2025, defendants timely removed plaintiffs' Louisiana case to this Court on the basis of diversity jurisdiction.[16] Although defendants acknowledged that plaintiffs and Henderson are all citizens of Louisiana,[17] and that this would normally defeat the complete diversity requirement, they maintained that federal jurisdiction is proper because Henderson was improperly joined.[18] Henderson's citizenship "is therefore not considered for diversity jurisdiction purposes."[19] In addition, defendants' removal notice noted that plaintiffs' claims are "prescribed on their face" with respect to Henderson.[20]

After the case was removed by defendants, plaintiffs filed an amended complaint[21] and, subsequently, a motion[22] to remand. In their motion to remand, plaintiffs argue that Henderson was not improperly joined because their allegations demonstrate the possibility of recovery against him.[23] Further, they argue that their claims against Henderson are timely because prescription was interrupted when they sued OxyChem in Texas state court.[24]

---

[16] *See* R. Doc. No. 1 (noting that Henderson and OxyChem were not served with the state petition until May 7, 2025, and May 9, 2025, respectively).
[17] *Id.* at 3–4 (defendants' notice of removal); *see also* R. Doc. No. 1-2, at 5 (original Louisiana petition).
[18] R. Doc. No. 1, at 4.
[19] *Id.*
[20] *Id.* at 5.
[21] R. Doc. No. 5.
[22] R. Doc. No. 10.
[23] *See* R. Doc. No. 10-1, at 3.
[24] *See id.* at 4.

3

In response, defendants proffer two theories in support of their contention that Henderson was improperly joined.[25] First, they argue that plaintiffs have not shown that they can hold Henderson individually liable in tort pursuant to Louisiana law, and therefore, they have no possibility of recovery against him.[26] Second, they argue that because plaintiffs cannot show that Henderson and OxyChem are joint tortfeasors, plaintiffs' claims against Henderson are prescribed.[27] Plaintiffs did not reply.

## II.   LEGAL STANDARDS

"Under the federal removal statute, a civil action may be removed from a state court to a federal court on the basis of diversity." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016); *see also* 28 U.S.C. §§ 1441(a) and 1332. For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, exclusive of interests and costs, and there must be complete diversity between the plaintiff and all defendants. *See* 28 U.S.C. § 1332(a). However, "such diversity cannot be destroyed by a plaintiff fraudulently joining a non-diverse defendant." *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 333 (5th Cir. 2004); *see also Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 812 (5th Cir. 2021) ("If a non-diverse defendant is improperly joined, however, a district court can disregard the citizenship of that defendant for the purposes of evaluating its jurisdiction.").

---

[25] *See* R. Doc. No. 12.
[26] *See id.* at 6–12.
[27] *Id.* at 12–17.

4

A party may establish that a non-diverse defendant was fraudulently joined in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 473 (5th Cir. 2022) (quoting *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc)).

Defendants seek to establish improper joinder the second way.[28] *See also Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 199 ("Because [the joined defendant] is, in fact, nondiverse, only the latter option is relevant."). The test for determining improper joinder in this way is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant." *Palmquist v. Hain Celestial Grp., Inc.*, 103 F.4th 294, 304 (5th Cir. 2024), *cert. granted in part on other grounds,* No. 24-724, 2025 WL 1211787 (U.S. Apr. 28, 2025). Stated differently, this "means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* Defendants carry the burden of persuasion as the party claiming improper joinder, and their burden is a "heavy one." *Palmquist*, 103 F.4th at 304; *see also Smallwood*, 385 F.3d at 575 ("If, however, the foreign defendant fails to prove the joinder improper, then diversity is not complete, the diverse defendant is not entitled to

---

[28] R. Doc. No. 1, at 4 ("The Petition reveals that Plaintiffs have no reasonable basis of recovery against Henderson under Louisiana law . . . .").

5

remove, and remand is mandated."). "Any contested issues of facts and any ambiguities of state law must be resolved in favor of remand." *Id.* (citation modified).

The Court first conducts a "Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573; *see also Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 208 (holding that the court must apply the federal, rather than the state, pleading standard to determine whether plaintiffs have stated a claim under state law). When conducting this analysis, the Court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." *Palmquist*, 103 F.4th at 304.

Intuitively, where prescription bars a plaintiff's claims against a non-diverse defendant, that defendant has been improperly joined. *See Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 673 (5th Cir. 2007). "Although post-removal filings may not be considered 'to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court,' they can be considered to the extent they 'clarify or amplify the claims actually alleged' in the removed pleading." *Id.* at 303 (holding that the district court may examine a post-removal amended complaint when conducting its improper joinder analysis).

Typically, if the allegations are sufficient to survive a Rule 12(b)(6) inquiry, there is no improper joinder. *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016). However, "when a complaint states a claim that satisfies 12(b)(6), but has 'misstated or omitted discrete facts that would determine the propriety of joinder, the

6

district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* (citation modified). That inquiry is limited to evidence of "discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573–74; *Ticer v. Imperium Ins. Co.*, 20 F.4th 1040, 1046 (5th Cir. 2021) (holding a summary inquiry "is appropriate *only* to identify the presence of discrete and undisputed facts that would *preclude* plaintiff's recovery against the in-state defendant.") (emphasis added). The court will not pierce the pleadings to cure a plaintiff's pleading deficiencies. *See Lundy v. ACE Am. Ins. Co.*, 674 F. Supp. 3d 326, 336 (M.D. La. 2023), *as amended* (Aug. 11, 2023) (declining to pierce the pleadings to allow the plaintiff to "attempt to remedy the vague allegations" in the complaint); *but see St. Charles Surgical Hosp. LLC v. HUB Int'l, Ltd.*, 535 F. Supp. 3d 588, 596 (E.D. La. 2021) (Morgan, J.) (considering the plaintiffs' proffered evidence to support a finding that there was a possibility of recovery against the non-diverse defendant).

### III.  ANALYSIS

#### a.  Henderson's Liability in Tort Pursuant to Louisiana Law

Common to both of defendants' theories is that plaintiffs have no possibility of remedy against Henderson in tort pursuant to Louisiana law. Plaintiffs contend that defendants have not met their burden of showing that they have "no possibility" of recovery.[29] *Palmquist*, 103 F.4th at 304. According to plaintiffs, they have alleged enough facts to demonstrate Henderson was negligent pursuant to Louisiana's

---

[29] R. Doc. No. 10-1, at 7.

7

general tort statute.[30] *See* La. Civ. Code art. 2315(A) ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."). In contrast, defendants argue that Louisiana law allows for tort recovery against employees in their individual capacities only in certain limited circumstances, as set out by the Louisiana Supreme Court in *Canter v. Koehring. See generally* 283 So.2d 716, 721 (La. 1973), *superseded on other grounds by statute*, La. Rev. Stat. § 23.1032 (1998)). Pursuant to *Canter*, an employee is personally liable in tort only if "(1) the employer owes a duty of care to a third person; (2) the employer delegated that duty to a defendant-employee; (3) and the defendant-employee breached the duty through his own fault and lack of ordinary care." *Moore v. Manns*, 732 F.3d 454, 456–57 (5th Cir. 2013) (citing *Canter*, 283 So.2d at 721). With respect to the third factor, "a defendant-employee's 'general administrative responsibility' is insufficient to impose personal liability." *Id.* at 457 (quoting *Canter*, 283 So.2d at 721).

Plaintiffs are correct that *Canter* does not entirely displace general tort liability. "Of course, the officer, agent, or employee may also be liable for injury resulting from his fault independent of any obligation imposed upon him by virtue of his employment duties, even though the fault occurs during the course of his employment." *Canter*, 283 So. 2d at 722 n.7; *see also Street v. Wal-Mart, Inc.*, No. 22-05438, 2023 WL 3881071, at *4 (W.D. La. May 24, 2023), *report and recommendation adopted*, No. 22-05438, 2023 WL 3874316 (W.D. La. June 7, 2023)) (finding general tort liability, pursuant to article 2315, was possible where employee negligently hit

---

[30] *Id.*

patron with a shopping cart) ("The court plausibly may infer that [the defendant employee] personally breached a duty that every person owes to every other person, that is, not to strike, hit, ram, or knock him or her over."). However, it is clear that *Canter* applies "[w]here the sole basis for the duty breached by the employee or manager is that imposed by virtue of the employment or agency relationship." *Magee v. Dicks Sporting Goods, Inc.*, No. 20-00418, 2020 WL 5539795, at *3 (W.D. La. Aug. 31, 2020), *report and recommendation adopted*, No. 20-00418, 2020 WL 5535018 (W.D. La. Sept. 15, 2020); *see also Canter*, 283 So. 2d at 722 n.7 ("The [*Canter*] criteria . . . apply only where the [s]ole basis of the duty breached is that it is imposed by virtue of the employment or agency relationship.").

Reading plaintiffs' amended complaint as a whole, it is clear that the duty they allege Henderson breached arose solely out of his employment relationship with OxyChem. The only allegations specifically pertaining to Henderson are confined to one paragraph of plaintiffs' amended complaint:

> On or about the date of the incident, Plaintiffs were cutting pipe at the Geismar Plant. The specific pipe the Plaintiffs were cutting had an air line which was cut off prior to cutting. An operator at the Geismar Plant, Defendant Eric Henderson, negligently hooked up the other end of the air line to one of the tanks to blow out the chlorine, but since the line had already been cut, it propelled the chlorine towards Plaintiffs, hitting them with a chlorine cloud. Mr. Henderson did so when he knew or should have known that Plaintiffs would be harmed as a result of his actions. [31]

Plaintiffs' other allegations are directed at "defendants" collectively and sound in the general duty owed by facility owners and operators to exercise "reasonable care for

---

[31] R. Doc. No. 5, at ¶ 9.

9

the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm."[32] *Earle v. Brookshire Grocery Co.*, No. 22-04522, 2023 WL 3937150, at *4 (W.D. La. May 25, 2023), *report and recommendation adopted*, No. 22-04522, 2023 WL 3933698 (W.D. La. June 9, 2023) (quoting *Mundy v. Department of Health and Human Resources*, 620 So.2d 811, 813–14 (La. 1993)).

Although plaintiffs contend that Henderson breached the general duty articulated in article 2315 not to "cause damage to another,"[33] it is clear to the Court that any duty Henderson had to ensure that plaintiffs were not harmed when he

---

[32] *Id.* at ¶ 15 ("Defendants were negligent, negligent per se, and grossly negligent for the following reasons:
    a. Failing to maintain its premises in a reasonable and safe condition;
    b. Failing to provide a safe workplace, including but not limited to failing to ensure that sufficient personnel were on site to perform the work safely;
    c. Failing to provide adequate equipment, including but not limited to personal protective equipment;
    d. Negligently connecting the chlorine line to air;
    e. Negligently supervising the work;
    f. Negligently monitoring the work;
    g. Failing to properly maintain equipment;
    h. Failing to provide adequate training;
    i. Failing to provide adequate safety measures;
    j. Failing to give adequate warnings to Plaintiffs of an unsafe condition(s);
    k. Failing to adequately mark a dangerous condition(s);
    l. Failing to take appropriate and reasonable action to protect Plaintiffs;
    m. Creating a dangerous condition;
    n. Failing to timely and appropriately remedy a dangerous condition;
    o. Failing to adopt appropriate safety policies and procedures necessary to prevent incidents such as the one complained of;
    p. Failing to enforce those safety policies and procedures necessary to prevent incidents such as the one complained of;
    q. Vicariously liable for the acts and/or omissions of their employees;
    r. Failing to hire, manage, train, and supervise competent employees; and
    s. other acts deemed negligent and grossly negligent.").
[33] *See* R. Doc. No. 10-1, at 8; La. Civ. Code art. 2315(A) (quotation modified).

hooked up to the air line would be imposed by virtue of his employment. *Cf. Way v. Valero Energy Corp.*, No. 24-416, 2025 WL 2153302, at *1 (M.D. La. Feb. 27, 2025) (analyzing the plaintiff's claim using the *Canter* factors where the non-diverse defendant had released "hot slurry into the designated coke pit area, . . . covering [the plaintiff], who was working in that area at the time"); *Nero v. Louisiana Pigment Co. LP*, No. 23-1180, 2024 WL 4649769, at *1 (W.D. La. Sept. 12, 2024), *report and recommendation adopted*, No. 23-1180, 2024 WL 4649764 (W.D. La. Oct. 1, 2024) (applying the *Canter* factors against a defendant-employee who told contractors exposed to carbon monoxide that "they did not need fresh air equipment or carbon monoxide equipment," because "there were no gasses, including carbon monoxide, actively flowing through the pipe" they were working on); *see also Justice v. Lee*, No. 21-1841, 2021 WL 5907714, at *4 (E.D. La. Dec. 14, 2021) (Africk, J.) (applying the *Canter* factors where the non-diverse defendant employee "cursed and verbally assaulted" plaintiff-patron, finding he had breached a number of delegated duties) ("The allegations include 'failing to serve a patron,' 'failing to act in accordance with the policies and procedures of CVS,' 'failing to obtain the correct information regarding mask mandates and the exclusions thereof,' and 'refusing to serve someone in need of medical attention,' among others."). Accordingly, the Court will analyze whether plaintiffs have any possibility of recovery against Henderson under *Canter*.

### b.  Henderson's Liability Pursuant to *Canter*

Defendants primarily argue that plaintiffs have not alleged facts establishing that OxyChem delegated any duty to Henderson, the second *Canter* factor.[34] Specifically, they argue that "Plaintiffs do not allege any facts about Henderson's actual duties, much less any factual allegations suggesting that Henderson was independently and specifically tasked with air line safety or Plaintiffs' safety in particular."[35] This, according to defendants, is enough to show plaintiffs have no possibility of recovery against Henderson.[36] The Court agrees.

The lone paragraph specific to Henderson states, in conclusory fashion, that he was negligent when he connected the air line to blow out the chlorine and, as a result, caused plaintiffs to be hit with a chlorine cloud.[37] Plaintiffs have alleged no facts demonstrating that OxyChem specifically delegated any duty to Henderson to check that the air line had not been cut prior to connecting to it or to otherwise ensure plaintiffs' safety while they were cutting pipe at the Geismar plant. Furthermore,

---

[34] R. Doc. No. 12, at 6–12. The Court notes that defendants state, without further discussion, that plaintiffs cannot satisfy the first *Canter* factor. *See id.* at 9–10 ("Even assuming that the first *Canter* factor is met—that OxyChem owed and breached a duty to Plaintiffs, and the breach caused Plaintiffs' damages (*all of which OxyChem specifically disputes*)—Plaintiffs have not established any of the remaining factors.") (emphasis added). As it pertains to the third *Canter* factor, defendants argue that "[t]he third factor (a breach of the employee's duty through personal fault) cannot be met if the second factor (a delegation of a duty by employer to the employee) is not met." *Id.* at 10. For this reason, the Court will focus on the second factor to determine whether defendants have met their burden of demonstrating no possibility of recovery.
[35] *Id.* at 10.
[36] *Id.*
[37] *See* R. Doc. No. 5, at ¶ 9.

plaintiffs allege no facts to support their conclusory allegation that Henderson "should have known that plaintiffs would be harmed as a result of his actions."[38] *Justice*, 2021 WL 5907714, at *5 (Africk, J.) ("[W]hen conducting an improper joinder analysis, the Court does not accept as true mere conclusory allegations."). Without these allegations, plaintiffs cannot hold Henderson individually liable. *Compare Way*, 2025 WL 2153302, at *4 ("[T]here are no allegations that [the defendant-employee] was responsible for confirming that no one was within a certain distance of the coke pit at the time of a drum discharge."), *with Nero*, 2024 WL 4649769, at *5 ("The Petition alleges that '[the defendant-employee] . . . was one of the employees of [the defendant-employer] charged with ensuring that the Premises were properly prepared for [the contractor's] work. [The defendant employee was] specifically responsible for ensuring that all pipes with chemicals were marked, warning contractors when 'fresh air' protective equipment was needed to complete work, and providing appropriate protective equipment, as needed.' These allegations are sufficient to state a claim as to the second *Canter* factor."). [39] Consequently, the Court

---

[38] *Id.*; *see also Battenfield v. Wal-Mart Stores, Inc.*, No. 11-1537, 2013 WL 880307, at *4 (W.D. La. Mar. 8, 2013) ("There is no indication whatsoever that [the defendant employee] knew or should have known of the existence of the spill such that she could have been personally obligated to warn the plaintiff or to personally oversee any clean-up efforts.").

[39] *See also Jack v. Evonik Corp.*, 79 F.4th 547, 557 (5th Cir. 2023) ("[The plaintiffs] must show that the [defendant employer] *specifically delegated* to the [individual] defendants the duty to protect the surrounding residents from unsafe levels of [the chemical] or the duty to regulate the emissions of [the chemical] to a safe level.") (emphasis added); *Rodriguez v. Waffle House, Inc.*, No. 21-699, 2021 WL 6108032, at *4 (E.D. La. June 9, 2021) (Africk, J.) ("Rodriguez failed to allege that Waffle House actually delegated some responsibility to Parker or that Parker owed any personal duty to Rodriguez to care for her safety."); *Battenfield*, 2013 WL 880307, at *4 ("While

finds that defendants have met their burden of demonstrating that plaintiffs have no possibility of recovery against Henderson.[40]

Based on the foregoing, the Court finds Henderson was improperly joined and must dismiss Henderson without prejudice. *Int'l Energy Ventures Mgmt., L.L.C.,* 818 F.3d at 209 ("When . . . a court determines that a nondiverse party has been improperly joined to defeat diversity, that party must be dismissed without prejudice."). Having found that Henderson was improperly joined, and dismissing him from this action for that reason, the Court need not consider whether plaintiffs' claims against Henderson are prescribed for the purposes of determining subject matter jurisdiction. [41]

---

[the defendant employee] has been delegated some degree of care by [her employer], there is no indication that they have delegated to her the task of micro-managing the store.").

[40] Recall that because the Court finds that plaintiffs' amended complaint cannot survive a Rule 12(b)(6) challenge, it will not consider the deposition attached to plaintiffs' motion to remand in its improper joinder analysis. *See Lundy*, 674 F. Supp. 3d at 336; *see also* R. Doc. No. 10-3 (deposition of OxyChem corporate representative). The Court will pierce the pleadings only in the limited case "in which a plaintiff *has* stated a claim," but has excluded "discrete and undisputed facts that would *preclude* [their] recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573–74 (emphasis added). Even if the Court had determined that plaintiffs could state a claim against Henderson, the deposition testimony is also not the type of "discrete and undisputed" fact that the Court would be permitted to consider when piercing the pleadings. *See Lundy*, 674 F. Supp. 3d at 337 ("[T]he information outside of the pleadings that Plaintiff desires the Court to consider . . . contains highly subjective statements. It does not supply any discrete facts indicating that [the defendant employee] was specifically delegated any duties . . . .").

[41] Nonetheless, because plaintiffs cannot state a claim against Henderson, plaintiffs would be unable to show that Henderson and OxyChem are joint tortfeasors, such that plaintiffs' suit against OxyChem in Texas state court would toll the prescriptive period with respect to Henderson. *Cf. McKenzie*, 122 So. 3d at 48 ("[T]he plaintiff alleged specific acts (or failures to act) by [each defendant], that, when taken as true,

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that plaintiffs' motion to remand is **DENIED.**

**IT IS ORDERED** that Henderson is **DISMISSED WITHOUT PREJUDICE.**

New Orleans, Louisiana, August 18, 2025.

						 _____
						          **LANCE M. AFRICK**
						 **UNITED STATES DISTRICT JUDGE**

---

are sufficient to establish some fault on the part of both [defendants] for the plaintiff's injuries, thereby making [the defendants] joint tortfeasors.").