UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JARED BREAUX ET AL.                                    CIVIL ACTION

VERSUS                                                 NO. 25-1055

OCCIDENTAL CHEMICAL CORP.                              SECTION "N"

**ORDER AND REASONS**

Before the Court are three motions filed by Defendant Occidental Chemical Corporation: (1) 12(b)(6) Motion to Dismiss Intentional Tort Claims,[1] (2) Motion for Summary Judgment Regarding Statutory Employer Defense,[2] and (3) Motion to Exclude or Limit Testimony of Benjamin Gibson.[3] Plaintiffs opposed all three motions[4], and Occidental submitted replies.[5] Having considered the parties' memoranda, the record, and applicable law, the Court grants the motion to dismiss and the motion for summary judgment and denies as moot the motion to exclude or limit testimony.

## I.    Background

Plaintiffs Jared Breaux, Jayce Breaux, and Josh Dake filed this action alleging they incurred an occupational injury while employed by River Parish Contractors as pipefitters working at the Occidental Chemical Corporation Geismar Plant.[6] On the day of the injury, they were assigned to cut and replace specific

---

[1] Rec. Doc. 64.
[2] Rec. Doc. 66.
[3] Rec. Doc. 68.
[4] Rec. Docs. 73, 74, and 75.
[5] Rec. Docs. 78, 79, and 80.
[6] Rec. Doc. 62 ¶ 7.

sections of process air piping at the plant.[7] Before they could begin this work, Occidental operators and supervisors marked the sections of the pipe to be cut and an Occidental operator issued a line break permit directing them to cut open and remove the marked sections.[8] The operator who issued the permit was first responsible for locking and tagging out the entire system to prevent the system from being "energized" while the work was in progress.[9] The pipe was part of a system directly connected to a liquefier containing residual chlorine.[10] Properly locking and tagging out the system was necessary to prevent Plaintiffs' exposure to chlorine and other hazardous chemicals.[11] Plaintiffs allege that after they began cutting the section of pipe pursuant to the permit, the Occidental operator attempted to clear the residual chlorine from the liquefier by connecting it to pressured air from a utility hose, which energized the system the operator had just locked out.[12] Chlorine was propelled down the process piping and escaped through the line break, exposing Plaintiffs to chlorine and injuring them.[13]

Plaintiffs allege that the operator knew this exposure was substantially certain to occur from energizing the system, as that was the reason he locked the system out in the first place.[14] They further allege that Occidental had inadequate policies and procedures to properly address the necessity of locking and tagging out

---

[7] *Id.* ¶ 8.
[8] *Id.*
[9] *Id.* ¶ 9.
[10] *Id.* ¶ 11.
[11] *Id.* ¶ 9.
[12] *Id.* ¶ 11.
[13] *Id.*
[14] *Id.* ¶ 12.

the air line, failed to implement a proper design for the air system, and failed to provide proper employee training.[15]

In their original and first amended complaints, Plaintiffs alleged causes of action based in negligence against Occidental and one of its employees.[16] Beginning in February 2026, Plaintiffs twice sought leave to add an intentional-tort claim in an effort to avoid the tort immunity afforded Occidental under the Louisiana Workers' Compensation Act.[17] The Magistrate Judge found the first proposed amendment insufficient but permitted Plaintiffs "a final opportunity" to seek leave to amend to "plead their best case."[18] When Plaintiffs renewed their request, Occidental opposed, arguing the allegations do not meet the demanding standard for an intentional tort.[19] On April 15, 2026, the Magistrate Judge granted Plaintiffs leave to file their second amended complaint, reasoning that the better procedural course was to test the sufficiency of the intentional-tort allegations in the context of a Rule 12(b)(6) motion rather than to deny leave to amend.[20]

Occidental now seeks dismissal of the Plaintiffs' intentional-tort claims under Federal Rule of Civil Procedure 12(b)(6), asserting that the claims do not rise to the level of an intentional act under La. Rev. Stat. Ann. § 23:1032(B).[21] Occidental also moves for summary judgment on its statutory-employer defense.[22] Plaintiffs oppose

---

[15] *Id.* ¶¶ 14-16.
[16] Rec. Doc.5 ¶ 15.
[17] Rec. Doc. 42; Rec. Doc. 51.
[18] Rec. Doc. 47 at 10.
[19] Rec. Doc. 56.
[20] Rec. Doc. 61.
[21] Rec. Doc. 64-2 at 2.
[22] Rec. Doc. 66.

Occidental's motions and, in the alternative, move under Rule 56(d) to continue the motion pending further discovery.[23]

## II.     Legal Standard

### A. Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[24] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[25] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[27] Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"[28] or "naked assertion[s]"[29] devoid of "further factual enhancement"[30] are not sufficient.

---

[23] Rec. Docs. 73, 74, 75.

[24] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[26] *Id.*

[27] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

[28] *Iqbal*, 556 U.S. at 663, 678.

[29] *Twombly*, 550 U.S. at 557.

[30] *Id.*

However, "legal conclusions can provide the framework of a complaint, [if] they [are] supported by factual allegations."[31] "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[32] "Although detailed factual allegations are not required," "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[33]

## B. Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] "An issue is material if its resolution could affect the outcome of the action."[35] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[36] All reasonable inferences are drawn in favor of the nonmoving party.[37] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[38]

---

[31] *Iqbal*, 556 U.S. at 679.; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

[32] *Iqbal*, 556 U.S. at 679.

[33] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (citation modified).

[34] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[35] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[36] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

[37] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[38] *Smith v. AmedisysInc.*, 298 F.3d 434, 440 (5th Cir. 2002).

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[39] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[40]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[41] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[42] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party

---

[39] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257,1264-65 (5th Cir. 1991) (citation modified).
[40] *Celotex*, 477 U.S. at 322-24.
[41] *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727.1 (2016) (discussing *Celotex* summary-judgment burden of proof standard).
[42] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[43] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[44] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[45] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[46]

Still, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim."[47] "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[48]

---

[43] *Celotex*, 477 U.S. at 332-33.
[44] *Id.*
[45] *Id.* at 332 n.3.
[46] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[47] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[48] *Id.* (citation modified).

III.    **Analysis**

   A.    **Plaintiffs do not state a claim for an intentional tort.**

The Louisiana Workers' Compensation Act provides compensation to an employee who "receives personal injury by accident arising out of and in the course of his employment."[49] The legislature designed a "quid-pro-quo system" that provides general immunity from tort liability to employers while affording certain limited remedies to injured employees.[50] The Act's exclusivity for injured workers is not absolute, however; the Act preserves a cause of action against employers whose intentional act caused the injury.[51] The central question raised by Occidental's motion to dismiss is therefore whether Plaintiffs have pleaded facts from which the Court may draw the reasonable inference that Occidental engaged in an intentional act from which Plaintiffs' injury resulted.[52]

The Louisiana Supreme Court has made clear that "the intentional tort exception to the exclusivity of the workers compensation act is … to be applied in very strict and limited circumstances."[53] The phrase "intentional act" carries the same meaning as "intentional tort" in the context of civil liability.[54] The divide between intentional and unintentional acts in the Act originates in the common law

---

[49] La. Rev. Stat. Ann. § 23:1031.

[50] *Champagne v. Am. Alternative Ins. Corp.*, 112 So. 3d 179, 184 (La. 2013); *see* La. Rev. Stat. Ann. § 23:1032(A).

[51] La. Rev. Stat. Ann. § 23:1032(B); *see Harper v. Boise Paper Holdings, L.L.C.*, 575 F. App'x 261, 263 (5th Cir. 2014) (stating "Section 1032(B) provides an exception to this exclusivity when a worker is injured as a result of an employer's intentional act.") (citation modified).

[52] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[53] *Cole v. State Dep't of Pub. Safety & Corr.*, 825 So. 2d 1134, 1141 (La. 2002).

[54] *Bazley v. Tortorich*, 397 So. 2d 475, 479 (La. 1981).

recognition that "harmful conduct is considered more reprehensible if intentional."[55] Accordingly, the Louisiana legislature determined that a defendant who intended to do harm is potentially subject to greater liability.

Under La. Rev. Stat. Ann. § 23:1032, an act is "intentional" where the actor either "(1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result."[56]

For purposes of this motion the Court accepts the well-pleaded factual allegations of the Second Amended Complaint as true and draws all reasonable inferences in Plaintiffs' favor.[57] Plaintiffs do not allege that Occidental consciously desired to injure them. The Court's analysis therefore addresses the second definition: whether the amended complaint alleges facts permitting the reasonable inference that Occidental knew Plaintiffs' exposure to chlorine was substantially certain to follow from its operator's conduct.

The "substantially certain" analysis is demanding. It is not satisfied by a showing that injury was likely, or even highly probable; the consequences of the act must be "nearly inevitable" or "virtually sure" to follow.[58] Indeed, courts have defined "substantially certain to follow" to mean that the result was "inevitable" or "incapable of failing."[59] Louisiana courts often consider whether the same conduct previously

---

[55] *Id.* at 480.

[56] *Reeves v. Structural Preservation Sys.*, 731 So. 2d 208, 211 (La. 1999); *see also Harper*, 575 F. App'x at 263 (quotation omitted).

[57] *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004) (citing *Herrmann Holdings Ltd. v. Lucent Tech. Inc.,* 302 F.3d 552, 558 (5th Cir. 2002)).

[58] *Reeves*, 731 So. 2d at 213 n.3.

[59] *Jasmin v. HNV Cent. Riverfront Corp.*, 642 So. 2d 311, 312 (La. Ct. App. 1994) (writ denied).

caused injury.[60] Mere knowledge that a dangerous condition exists, or that an accident could or even probably would occur, falls short of meeting the intentional act exception under Louisiana law.[61]

Plaintiffs allege that an operator employed by Occidental did each of the following: marked the sections of process air piping to be cut;[62] issued the line-break permit directing Plaintiffs to cut the line;[63] was personally responsible for locking and tagging out the system before work began;[64] recognized that locking out the system was necessary to prevent chlorine exposure;[65] locked out the system himself for that very purpose;[66] and then, while Plaintiffs were breaking the line he had authorized them to open, connected a utility hose to a chlorine liquefier within the same piping system, energizing it and propelling chlorine through the open line.[67] Here, Plaintiffs say, the same person who knew the line was open and knew why it had to stay de-energized is the person who energized it.[68] From that, Plaintiffs urge, the Court may reasonably infer that the operator knew Plaintiffs' exposure was substantially certain to follow.[69]

Construed in the light most favorable to Plaintiffs, the allegations identify a specific actor, a specific sequence, and a specific basis for inferring knowledge. The

---

[60] *Harper*, 575 F. App'x at 264.
[61] *Jasmin*, 642 So. 2d at 312.
[62] Rec. Doc. 62 ¶ 8.
[63] *Id.* ¶ 9.
[64] *Id.*
[65] *Id.* ¶ 12.
[66] *Id.*
[67] *Id.* ¶ 11.
[68] *Id.* ¶ 12.
[69] *Id.* ¶ 21.

question is whether, taken as true, they permit the reasonable inference that the law requires—not knowledge that injury was possible, likely, or even highly probable, but knowledge that it was "nearly inevitable" and "virtually certain" to occur.[70] They do not.

First, the lock-out allegation that Plaintiffs treat as the cornerstone of intent in fact undercuts it. Plaintiffs emphasize that the operator locked out the system: "The Oxy Operator knew that energizing the system was substantially certain to expose the Plaintiffs to chlorine, which is why he locked the system out in the first place."[71] But a person who takes a deliberate precaution against a harm is, by the same token, a person attempting to prevent that harm—not one who proceeds knowing the harm is virtually certain to occur. The amended complaint describes how the operator secured the system to avoid exposure and then, by connecting the liquefier, failed to appreciate that he was undoing the very protection he had put in place.[72] That is an allegation of a serious mistake in execution. It is not an allegation that the operator knew, when he energized the system, that chlorine reaching Plaintiffs was incapable of failing to occur. The complaint supplies no fact bridging the operator's knowledge that the line was open to knowing "in the moment" that energizing the liquefier was certain to send chlorine through it. The claim that he "knew" exposure was "substantially certain" is not a reasonable inference where the surrounding factual allegations point the other way.

---

[70] *Reeves*, 731 So. 2d at 213.
[71] Rec. Doc. 62 ¶ 12.
[72] *Id.*

Second, the conduct alleged amounts at most to recklessness, and recklessness is not equivalent to intent under the Act. The Louisiana Supreme Court has held that "mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing."[73] In line with this precedent, the Louisiana courts of appeals have repeatedly held that "employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment."[74] The exception is not reached "[e]ven if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work."[75]

The First Circuit applied this principle in *Saizon v. Dow Chemical Company*, where two Dow employees failed to clear a line of hydrocarbons before authorizing hot work.[76] The court held that their conduct, "while perhaps negligent or even reckless, do[es] not rise to the level of an intentional tort."[77] The allegations here describe a similar failure: an operator who locked out the system as a safety measure and then undid that protection by energizing the line. However grave, that conduct falls on the negligence-to-recklessness side of the line the Louisiana courts have drawn, not the intentional side.

---

[73] *Reeves*, 731 So. 2d at 213 (citation modified).
[74] *Id.* at 211.
[75] *Id.* (citation modified).
[76] No. 2025 CA 1139, 2026 WL 1122621 (La. Ct. App. Apr. 24, 2026).
[77] *Id.* at *8.

Plaintiffs' reliance on *Higgins* does not change the analysis.[78] Plaintiffs cite *Higgins* for the proposition that Louisiana law imposes no "past incident" requirement.[79] Whatever *Higgins* establishes on that point does not aid Plaintiffs here. As the First Circuit explained, that case turned on evidence that the defendant's management was aware of specific dangers at the facility, based on multiple facility evaluations and repeated warnings.[80] The operative complaint here does not allege that Occidental's management was aware of the specific harms alleged here or that any similar incident had occurred previously at the facility.

The Court is mindful that this determination is made on the pleadings, taking Plaintiffs' allegations as true, and that *Saizon* was decided at summary judgment on a developed record. But the standards converge on the dispositive point: the substantial-certainty requirement asks whether the alleged facts support an inference of knowledge that injury was inevitable, and the facts pleaded here, even read at their most favorable, support, at most, an inference of recklessness. Under *Reeves*, that is not enough. The amended complaint therefore fails to state an intentional-tort claim within the exception to the Act's exclusivity.

### B. Occidental is Plaintiffs' statutory employer and thus immune from tort liability.

As discussed above, under the Louisiana Workers' Compensation Act, an employee injured in the course and scope of his employment is generally limited to

---

[78] *Higgins v. Williams Energy Partner, L.P.*, 266 So. 3d 897 (La. 2019).
[79] Rec. Doc. 73 at 8.
[80] *Saizon*, 2026 WL 1122621, at *6-*8.

workers' compensation as his exclusive remedy against his employer.[81] The Act's

coverage extends to both direct, or "principal," employers and statutory employers.[82]

Here, Occidental claims the status of statutory employer. As the party asserting

tort immunity under the Act, Occidental bears the burden of establishing its

statutory-employer status. The immunity provisions are strictly construed against

the party claiming them.[83] Whether a party is a statutory employer is ultimately a

question of law for the Court.[84]

A statutory-employer relationship arises under La. Rev. Stat. Ann. § 23:1061

when a principal engages a contractor, by written contract, to perform work that is

part of the principal's trade, business, or occupation.[85] Where the written contract

between the principal and the contractor "recognizes the principal as a statutory

employer," § 1061(A)(3) creates a rebuttable presumption of a statutory-employer

relationship between the principal and contractor's employees.[86] That presumption

"***may only be overcome*** by showing the work performed ***is not*** an integral part of

or essential to the ability of the principal to generate that principal's goods,

products, or services."[87] Louisiana courts construe "integral" and "essential"

---

[81] *Prejean v. Maint. Enters., Inc.*, 8 So. 3d 766, 770 (La. Ct. App. 2009).

[82] La. Rev. Stat. Ann. § 23:1032; *id.* § 23:1061; *Deshotel v. Guichard Operating Co.*, 916 So. 2d 72, 74 (La. 2004).

[83] *Weber v. State*, 635 So. 2d 188, 191 (La. 1994).

[84] *Maddox v. Superior Steel*, 814 So. 2d 569, 572 (La. Ct. App. 2001); *see also Ramos v. Tulane Univ.*, 951 So. 2d 1267, 1269 (La. Ct. App. 2007) ("The determination of statutory employer status is a question of law for the court to decide.").

[85] *Morris v. Graphic Packaging Int'l, LLC,* 829 F. App'x 43, 45 (5th Cir. 2020); *see also Arnold v. Shell Oil Co.,* 419 F.2d 43, 50 (5th Cir. 1969) (holding that "the test for determining whether an activity is part of an employer's trade or business for purposes of the Louisiana Workmen's Compensation Statute is whether the particular activity is essential to the business.").

[86] *Fleming v. JE Merit Constructors, Inc.*, 985 So. 2d 141, 145 (La. Ct. App. 2008) (citing La. Rev. Stat. Ann. § 23:1061).

[87] *Id.*; La. Rev. Stat. Ann. § 23:1061.

liberally, finding that even work that is ancillary to the statutory employer's operations may nevertheless be essential and integral to those operations. The presumption is correspondingly difficult to rebut.[88] Occidental has carried its burden, and the presumption is unrebutted.

First, a written contract recognizes the principal as a statutory employer as § 1061(A)(3) requires. Plaintiffs' direct employer, River Parish Contractors,[89] was contracted by Occidental to perform work pursuant to a purchase order at Occidental's Geismar plant.[90] The purchase order is a "written contract" as required by La. Rev. Stat. Ann. § 23:1061(A)(3) because it contains a clear written expression that Occidental was Plaintiffs' statutory employer.[91] The purchase order states in relevant part that "[t]his contract recognizes that Owner shall be considered the statutory employer of Contractor's [River Parish's] employees and its subcontractors who provide work or services under this contract in accordance with Louisiana R.S. 23:1031 or R.S. 23:1061," that "Owner is granted the exclusive remedy protection of Louisiana R.S. 23:1032," and that "the recognition of the Statutory Employer status is made pursuant to R.S. 23:1061."[92] That language tracks the statute and gives rise to the rebuttable presumption that Occidental is Plaintiffs' statutory employer.[93]

---

[88] *Ramos*, 951 So. 2d at 1270.

[89] Rec. Doc. 62 ¶ 7; Rec. Doc. 66-13 at 32-33 (deposition of Josh Dake); Rec. Doc. 66-14 at 24, 28 (deposition of Jayce Breaux); Rec. Doc. 66-15 at 20, 22 (deposition of Jared Breaux).

[90] Rec. Doc. 66-4 (Ex. A, Declaration of John Bin § 3).

[91] *See Morris,* 829 F. App'x at 45.

[92] Rec. Doc. 66-7 at 3.

[93] *See Morris*, 829 F. App'x at 45; *see also Nielsen v. Graphic Packaging Int'l, Inc.*, 469 F. App'x 305, 306 (5th Cir. 2012) (per curiam) (materially identical purchase order held to establish a statutory employer.)

Plaintiffs do not raise an issue of material fact as to the existence and validity of the purchase order. Their only response is to deny every undisputed material fact put forth by Occidental except one "in accordance with Plaintiff's Rule 56(d) Motion to Continue," alleging "Plaintiff has not been permitted necessary depositions to support his opposition."[94] Plaintiffs have not indicated any facts they could even hope to obtain through discovery that would call into question the contractual relationship between Occidental and River Parish Contractors.[95]

That River Parish did not sign the purchase order until after the incident in question does not alter this conclusion. River Parish's performance of the work contemplated by the purchase order, and its invoicing of Occidental for that work after the incident with reference to the purchase order, are sufficient to establish acceptance.[96]

Second, the presumption stands unrebutted. The undisputed facts establish that Plaintiffs' work was an integral part of or essential to the principal's ability to generate its goods, products, or services as a matter of law. It is not genuinely contested that the Plaintiffs performed work consisting of cutting and replacing sections of process air piping used in the operations of the Geismar plant, which was owned and operated by Occidental for the manufacture of certain chemicals.[97] The undisputed facts are that on the day of the incident, Plaintiffs were working on the

---

[94] Rec. Doc. 74-2. The only undisputed material fact that Plaintiffs admit is that they "are direct employees of River Parish Contractors." Rec. Doc. 66-1 ¶ 1.

[95] *See* Rec. Doc. 74-1 ¶¶ 4-6.

[96] *See, e.g.*, *Morris,* 829 F. App'x at 45-46; *Rolls ex rel. A.R. v. Packaging Corp. of Am. Inc.*, 34 F.4th 431, 440 (5th Cir. 2022).

[97] Rec. Doc. 62 ¶¶ 7-10; Rec. Doc. 66-5 at 1; Rec. Doc. 66-8 ¶¶ 4-8.

air piping system in connection with a turnaround.[98] "A 'turnaround' is a term used to describe the process whereby an operating unit of a plant ... is shut down and the machinery, piping systems, vessels, and the like are cleaned, refurbished, overhauled, replaced, and/or updated."[99] Whether work of that character is "integral" or "essential" within the meaning of § 1061(A)(3) is a legal question the Court resolves from the undisputed nature of the work. Courts have repeatedly held that maintenance, repair, and similar work performed to keep a chemical plant or refinery's production processes operating is essential to the principal's ability to generate its goods and services.[100] Plaintiffs have offered no argument, and identify no fact that discovery could develop, suggesting that replacing process air piping at an operating chlorine and caustic plant falls outside that settled line. They denied Occidental's statement of material facts solely by reference to their Rule 56(d) motion,[101] and their allegations confirm they were engaged in turnaround work when

---

[98] Rec. Doc. 66-8 ¶¶ 4-9; Rec. Doc. 66-15 at 6 (deposition of Jared Breaux); Rec. Doc. 66-14 at 4-5 (deposition of Jayce Breaux). The only ground on which Plaintiffs dispute any material fact is that they have not been permitted "necessary depositions." *See* Rec. Doc. 74-2. However, as discussed in Section C below, Plaintiffs do not identify any fact that could be obtained through discovery that could elicit a disputed fact. Instead, Plaintiffs' own deposition testimony and allegations support the finding that Plaintiffs were engaged in work that was integral and essential to the principal's production ability.

[99] *Salmon v. Exxon Corp.*, 824 F. Supp. 81, 82 n.1 (M.D. La. 1993); *see also* Doc. 66-13 at 7 (deposition of Josh Dake).

[100] *See, e.g.*, *Thompson v. Ga. Pac. Corp.*, 993 F.2d 1166, 1169 (5th Cir. 1993); *Joseph v. Shell Chem. Co.*, No. 07-5489, 2009 WL 1789422, \*5 (E.D. La. June 23, 2009); *King v. Debusk Servs. Grp., LLC*, 2017 CW 1577R, 2019 WL 4201475, \*5 (La. Ct. App. Sept. 4, 2019). *See also Saizon.*, 2026 WL 112262, at\*9 ("The Louisiana Supreme Court has made it clear that, "[e]ven if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.") (citing *Reeves*, 731 So. 2d at 211 (quoting Larson, 19 Workmen's Compensation Law, § 68.13 (1989))).

[101] *See* Rec. Doc. 74-2 (answering all of the factual assertions except 1 and 25 with "Plaintiff has not been permitted necessary depositions to support his opposition.").

the incident occurred.[102] The presumption therefore is not overcome, and Occidental is Plaintiffs' statutory employer as a matter of law.

Statutory-employer immunity bars Plaintiffs' tort claims against Occidental unless the intentional-act exception to the exclusive-remedy provision applies.[103] The basis the Plaintiffs pleaded for invoking that exception was their intentional-tort theory, which the Court dismisses for failure to state a claim.[104] Nothing in the summary-judgment record disturbs that conclusion. Occidental's evidence, unrebutted, is that no similar incident had occurred at the Geismar facility before Plaintiffs' injuries and Occidental was unaware its operator had failed to isolate the liquefier system before connecting the utility hose.[105] Because no exception to immunity applies, the exclusive-remedy provision controls, and Plaintiffs' tort claims against Occidental are barred.

## C.   A continuance for further discovery is inappropriate.

Rule 56(d) permits a court to defer ruling on a motion for summary judgment and order additional discovery where the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Such requests are "broadly favored and should be liberally granted," because the rule exists to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose."[106]

---

[102] *See* Rec. Doc. 5 ¶¶ 8-9.
[103] La. Rev. Stat. Ann. § 23:1032(B).
[104] Rec. Doc. 73 at 5-6; *see supra* Section III(A).
[105] Rec. Doc. 66-8 at 3 ("No similar incidents had occurred at the facility before this incident.").
[106] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006)).

This has its limits. "[T]o justify a continuance, the [Rule 56(d)] motion must demonstrate (1) why the movant needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact."[107] The nonmovant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts."[108] Instead, the party seeking a continuance must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist," and must "indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."[109] A continuance for additional discovery is not warranted if the party "'failed to explain what discovery [it] did have, why it was inadequate, and what [it] expected to learn from further discovery.'"[110] And critically, where "it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[111] The dispositive question, then, is whether the specific discovery the Plaintiffs identify could yield facts that would bear on the outcome of this motion.[112] Here, it could not.

Plaintiffs ask the Court to defer ruling so that they may depose Occidental's corporate representative, Mr. Devall, and operator Eric Henderson.[113] The

---

[107] *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534-35 (5th Cir. 1999).

[108] *Securities & Exchange Comm'n v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980).

[109] *Raby*, 600 F.3d at 561 (applying former Rule 56(f), renumbered as Rule 56(d)) (internal quotation marks omitted); *see also Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993) (plaintiff is "required to state with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials would assist him in opposing summary judgment.").

[110] *Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999) (quoting *Reese v. Anderson*, 926 F.2d 494, 499 n.5 (5th Cir. 1991)).

[111] *Raby*, 600 F.3d at 561.

[112] *Krim*, 989 F.2d at 1443.

[113] Rec. Doc. 74 at 1.

supporting declaration identifies three subjects: (1) facts "related to Oxy's contractual relationship, if any, to River Parish Contractors";[114] (2) "the scope of work River Parish Contractors was performing";[115] and (3) cross-examination of Mr. Devall bearing on "his credibility" and "the context" of his declaration.[116] They fail to present any basis for finding this discovery would present a genuine issue of material fact.

The first two subjects address facts that Occidental presents in its motion for summary judgment. The contractual relationship between Occidental and River Parish is established by the purchase order,[117] authenticated by Mr. Devall and admissible as a business record kept in the ordinary course.[118] In fact, under Louisiana law, even unsigned purchase orders are sufficient to establish a contractual relationship when there is a clear written expression that a party is a statutory employer.[119] Moreover, the scope of the work is stated on the face of the purchase order and is consistent with Plaintiffs' own allegations.[120] Plaintiffs identify no fact that a deposition might reveal that would bear on either question— much less a genuine issue of material fact about the contents or validity of the

---

[114] Rec. Doc 74-1 at 2.

[115] *Id.*

[116] *Id.*

[117] Rec. Docs. 66-5 and 66-7.

[118] Rec. Doc. 66-8 at 1; Fed. R. Evid. 803(6).

[119] *Morris*, 829 F. App'x at 46.

[120] *Compare* Rec. Doc. 66-7 at 1 ("Paint and NDE by Oxy…Fabricate and install approximately 450# of 3" pipe and fittings…Pull and replace each 3" 150# Valves…Demo all piping that has been replaced with new") *with* Rec. Doc. 62 ¶¶ 7-10 ("Plaintiffs were employed by River Parish Contractors (nonparty) as pipefitters and were working at the Occidental Chemical Corporation Geismar Plant"; "Plaintiffs were assigned to cut and replace specific sections or process air piping at the Geismar Plant"; "Plaintiffs were then issued a line break 'permit' by an Oxy Operator which directed them to cut open and remove those specific sections of pipe"; "Plaintiffs proceeded to cut open their section of the process air piping as directed.").

purchase order.[121] Whether that instrument establishes statutory-employer status is a question of law for the Court.[122] The scope of the work, moreover, is not genuinely contested: the purchase order and Plaintiffs' own allegations establish that the work consisted of replacing process air piping at Occidental's operating chemical plant. Whether work of that nature is integral or essential under § 1061(A)(3) is, again, a question of law for the Court to resolve from those undisputed facts.

Plaintiffs' credibility argument fares no better. A nonmovant cannot defeat summary judgment merely by expressing a desire to cross-examine the movant's declarant, absent some identification of the specific testimony to be impeached or the contrary fact to be developed.[123] That is especially so here, where the dispositive element—the existence and content of the written contract—rests on the document itself rather than on Mr. Devall's credibility.[124]

---

[121] *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 112 So. 3d 187, 192 (La. 2013) ("[W]hen a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit."); *Peterson v. Schimek*, 729 So. 2d 1024, 1029 (La. 1999) ("[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate."); *Angus Chem. Co. v. Glendora Plantation, Inc.*, 782 F.3d 175, 180 (5th Cir. 2015) (citing *Amoco Prod. Co. v. Tex. Meridian Res. Exploration Inc.*, 180 F.3d 664, 669 (5th Cir.1999)) ("[O]nly when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment.").

[122] *Maddox*, 814 So. 2d at 572.

[123] *See, e.g.*, *Skiba v. Jacobs Entertainment, Inc.*, 587 F. App'x 136, 139 (5th Cir. 2014) (affirming denial of Rule 56(d) continuance where plaintiff sought to continuance for expert to examine authenticated surveillance video); *see also Little v. Liquid Air Corp.*, 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 325) ("nonmovant must go beyond pleadings and designate specific facts showing that there is genuine issue for trial.").

[124] Rec. Doc. 66-7.

Finally, the request to depose Mr. Henderson is directed to the intentional-act exclusion.[125] That subject is immaterial to Occidental's statutory-employer status, which does not depend on the operator's conduct or state of mind. In any event, the Court dismisses Plaintiffs' intentional-tort theory on the pleadings under Rule 12(b)(6).[126]

The Court therefore need not decide whether Plaintiffs were diligent, because the discovery they seek could not, as a matter of law, create a genuine dispute of material fact on the question this motion presents. The Rule 56(d) motion is denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs have not pleaded facts supporting a reasonable inference that Occidental knew their exposure to chlorine was substantially certain to follow from its operator's conduct, and their intentional-tort claims therefore fail to state a claim. Occidental is Plaintiffs' statutory employer under La. Rev. Stat. Ann. § 23:1061, and the discovery Plaintiffs seek under Rule 56(d) could not create a genuine issue of material fact on that question. Because the intentional-act exception was the pleaded basis on which Plaintiffs sought to avoid the exclusive-remedy provision, and because no exception applies, La. Rev. Stat. Ann. § 23:1032 bars Plaintiffs' claims against Occidental in their entirety.

Accordingly,

---

[125] Rec. Doc. 74-1 at 2 ("I expect the cross-examination of Mr. Henderson regarding the matters submitted within his affidavit, as well the examination of Mr. Henderson regarding his actions at the time of the incident, to be material in opposing Defendant's Motion for Summary Judgment as it relates to the intentional acts exclusion.")

[126] *See supra* Section III(A).

**IT IS ORDERED** that Occidental's Motion to Dismiss is **GRANTED.**

**IT IS FURTHER ORDERED** that Occidental's Motion for Summary Judgment is **GRANTED,** and Plaintiffs' claims against Occidental Chemical  Corporation are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Occidental's Motion to Exclude or Limit the Testimony of Benjamin Gibson[127] is **DENIED AS MOOT.**

New Orleans, Louisiana, this 11th day of August, 2026.

_____
ANNA ST. JOHN
UNITED STATES DISTRICT JUDGE

---

[127] Rec. Doc. 68.